1 **THE WESTON FIRM**
2 GREGORY S. WESTON (239944)
*greg@westonfirm.com*
3 1405 Morena Blvd., Suite 201
4 San Diego, CA 92110
Telephone:  (619) 798-2006
5
6 **Counsel for Plaintiff**
7
8 **UNITED STATES DISTRICT COURT**
9 **SOUTHERN DISTRICT OF CALIFORNIA**
10
11
12 SHAIANNE STARKS, on behalf of
herself and all others similarly    Case No: ___'24CV0185 GPC BLM___
13 situated,
14
15         Plaintiff,    **CLASS ACTION COMPLAINT FOR
VIOLATIONS OF: THE UNFAIR
COMPETITION LAW AND THE
16      v.    CONSUMER LEGAL REMEDIES ACT**
17
CELSIUS HOLDINGS, INC.,    **No Jury Demand**
18
19         Defendant.
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.    JURISDICTION AND VENUE ............................................................... 1

II.   NATURE OF THE ACTION .................................................................... 1

III.  PARTIES ................................................................................................. 2

IV.  REGULATORY BACKGROUND .......................................................... 2

V.   THE SALE OF UNAPPROVED DRUGS HARMS THE PUBLIC. ....... 3

VI.  CELSIUS'S SPECIFIC MISREPRESENTATIONS, MATERIAL OMISSIONS, AND DRUG CLAIMS. ................................................... 3

VII. LIVE FIT IS AN UNAPPROVED NEW DRUG. .................................. 7

VIII. DEFENDANT'S ADVERTISING FOR LIVE FIT IS FALSE AND MISLEADING, RENDERING THE PRODUCTS MISBRANDED. ....... 9

IX.  DEFENDANT SOLD LIVE FIT IN PACKAGING BEARING UNPERMITTED HEALTH CLAIMS. ................................................. 10

X.   DEFENDANT'S PRACTICES WERE "UNFAIR" WITHIN THE MEANING OF THE UNFAIR COMPETITION LAW. ......................... 11

XI.  DEFENDANT'S PRACTICES WERE "UNLAWFUL" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW. ................ 12

XII. PLAINTIFF'S PURCHASE OF LIVE FIT AND RELATED INJURY. ............... 13

XIII. CLASS ACTION ALLEGATIONS ...................................................... 13

PRAYER FOR RELIEF .................................................................................. 20

NO JURY DEMAND ..................................................................................... 20

Plaintiff Shaianne Starks, on behalf of herself, all others similarly situated, and the general public, by and through her undersigned counsel, hereby sues Defendant Celsius Holdings, Inc. ("Celsius" or "Defendant") and upon information and belief and investigation of counsel, alleges as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (the Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and because more than two-thirds of the members of the class defined herein reside in states other than the states of which Defendant is a resident.

2.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District; and Defendant (1) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets of this District through the distribution and sale of its products in this District, and (2) is subject to personal jurisdiction in this District.

## II.    NATURE OF THE ACTION

3.    Celsius markets, distributes, and sells "energy drinks," including Celsius Live Fit ("Live Fit"), which are marketed with claims that render them unapproved new drugs.

4.    Celsius aggressively markets Live Fit with deceptive efficacy claims that suggest the product has medical benefits akin to prescription weight loss drugs.

5.    In truth, Live Fit fails to deliver the advertised benefits.

6.    Further, these claims are prohibited by the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq*. ("FDCA"), and subject any individual manufacturing or selling Live Fit to liability for the sale of an unapproved new drug.

7.    Defendant's representations mislead consumers into believing that Live Fit is safe, legal, and effective for its intended purposes.

8.    Plaintiff Shaianne Starks purchased and used Live Fit, one of Defendant's unapproved drugs, with the belief that the product was safe and effective and sold in

1

compliance with state and federal regulations.

9.     This action is brought to remedy Defendant's unfair and unlawful conduct. On behalf of the class defined herein, Plaintiff seeks an order compelling Celsius to, *inter alia*: (1) cease marketing and selling Live Fit as an illegal unapproved new drug; (2) conduct a corrective advertising campaign; (3) destroy all misleading and deceptive materials and products; (4) award Plaintiff and the Class members damages, punitive damages, interest, and restitution; and (5) pay costs, expenses, and attorney fees.

## III.     PARTIES

10.     Defendant Celsius is a Florida corporation which maintains its principal business office at 2424 North Federal Hwy, Suite 208, Boca Raton, FL 33431.

11.     During the class period, Celsius owned, manufactured, marketed, distributed, and sold Live Fit, an unapproved weight loss drug marketed with deceptive efficacy claims. Defendant marketed Live Fit with deceptive claims which suggest the product can provide prescription weight loss drugs benefits.

12.     Plaintiff Shaianne Starks is a citizen of California who purchased Live Fit during the class period for personal consumption.

## IV.     REGULATORY BACKGROUND

13.     "The term 'drug' means . . . (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (C) articles (other than food) intended to affect the structure or any function of the body of man or other animals." 21 U.S.C. § 321(g)(1).

14.     A "new drug" is any drug "not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the condition prescribed, recommended, or suggested in the labeling thereof . . . ." 21 U.S.C. § 321(p)(1).

15.     Pursuant to 21 U.S.C § 355(a), "No person shall introduce or deliver for introduction into interstate commerce any new drug . . ." without approval by the FDA.

16.     Further, 21 U.S.C. § 331(a) prohibits the "introduction or delivery for

2

introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded."

17.    Pursuant to 21 U.S.C. § 352(f), drugs are required to have adequate instructions for safe use.

## V.    THE SALE OF UNAPPROVED DRUGS HARMS THE PUBLIC.

18.    "Unapproved prescription drugs pose significant risks to patients because they have not been reviewed by FDA for safety, effectiveness or quality."[1]

19.    "Without FDA review, there is no way to know if these drugs are safe and effective for their intended use, whether they are manufactured in a way that ensures consistent drug quality or whether their label is complete and accurate." Id.

20.    "Unapproved drugs have resulted in patient harm, and the [FDA] works to protect patients from the risks posed by these drugs." Id.

21.    Unapproved drugs lack "labels and prescribing information that has" "been reviewed by FDA for accuracy and completeness."[2]

22.    Consumers using unapproved drugs run the risk of "unexpected and undocumented safety concerns due to lack of rigorous pre- and postmarket safety surveillance." Id.

23.    Unapproved drugs lead consumers in need of medical treatment to forego medically proven therapies.

## VI.    CELSIUS'S    SPECIFIC    MISREPRESENTATIONS,    MATERIAL OMISSIONS, AND DRUG CLAIMS.

24.    During the Class Period, Defendant manufactured, marketed, distributed, and sold Live Fit in packaging bearing misleading claims relating to the product's purported

---

[1] U.S. Food & Drug Admin., <u>Unapproved Drugs</u> (June 2, 2021), available at https://www.fda.gov/drugs/enforcement-activities-fda/unapproved-drugs.

[2] U.S. Food & Drug Admin., <u>Unapproved Drugs and Patient Harm</u> (June 2, 2021), https://www.fda.gov/drugs/enforcement-activities-fda/unapproved-drugs-and-patient-harm.

efficacy as a weight loss aid, appetite suppressant, and fat burner. Defendant also made misleading representations relating to Live Fit's efficacy on its website and Amazon.com product pages.

25.    These claims are not only false and misleading, but also show that the product is intended to affect the structure and function of the body, and to cure, mitigate, treat, or prevent disease.

26.    Further, these claims render Live Fit a "drug" within the meaning of 21 U.S.C. § 321(g).

27.    However, Celsius failed to obtain FDA approval to market and distribute Live Fit in violation 21 U.S.C. § 355 and Health & Safety Code § 111550.

28.    Specifically, Live Fit's label claims the product can "accelerate[] metabolism" and "burn[] body fat." The Live Fit label further claims that the product "turns on thermogenesis, a process that boosts your body's metabolic rate." Moreover, the label claims that "drinking Celsius prior to fitness activities is proven to energize, accelerate metabolism, burn body fat and calories."

29.    These claims are both deceptive and also render Live Fit a "drug" as defined by 21 U.S.C. § 321(g).

30.    [continued on next page]

CLASS ACTION COMPLAINT







CLASS ACTION COMPLAINT

31.    During the class period Celsius also advertised Live Fit with deceptive claims that the product provides prescription weight loss drug benefits.

32.    The Live Fit label, website, and Amazon page contained the following deceptive efficacy claims, which show that the product is intended to affect the structure and function of the body, and to cure, mitigate, treat, or prevent disease, during the Class Period:

- "Accelerates Metabolism"
- "Burns Body Fat"
- "clinically proven to boost your metabolism and help you burn body fat."
- "turns on thermogenesis, a process that boosts your body's metabolic rate"
- "Drinking CELSIUS prior to fitness activities helps energize, accelerate metabolism, burn body fat and calories"
- "BACKED BY SCIENTIFIC STUDIES"
- "Six published university studies have been conducted on CELSIUS by U.S. accredited scientific research facilities rendering strict scientific standards. To ensure consumer confidence, trust, and industry independence, the studies were all presented at scientific conferences and published in peer reviewed publications. Each one of these studies showed that CELSIUS has thermogenic properties."
- "Thermogenic properties are proven to increase metabolism and make the nervous system more active. In turn, this causes your body to burn more calories and body fat than you normally would with exercise alone."
- "drinking just one great-tasting CELSIUS before exercise can help reduce body fat, increase your endurance, and provide greater resistance to fatigue"
- "Green Tea Extract The extract used contains a specific ratio of EGCG (epigallocatechin gallate)—the compound that scientists have found boosts your metabolism and helps your body burn more calories."
- "Ginger Root Ginger root has a wonderful spicy flavor, and it's known to help support the process of thermogenesis as well as create a positive effect on digestive systems."
- "Chromium Known to help control hunger, chromium is an essential trace mineral that normalizes blood sugar levels and helps enhance the metabolism of proteins, carbohydrates, and lipids."

33.    These claims suggest Live Fit is a safe and effective drug which can treat

6

obesity and affect the structure and function of the human body by increasing metabolism, reducing body fat, reducing hunger, and increasing weight loss. These claims render Live Fit a "drug" within the meaning of 21 U.S.C. § 321(g)(1).

34.    However, Live Fit fails to deliver the advertised benefits.

35.    A true and correct copy of the Live Fit page from Defendant's website is attached hereto as **Exhibit 1.**

36.    A true and correct copy of the Live Fit Amazon product page is attached hereto as **Exhibit 2**.

37.    The FDA maintains a database of drugs which it has approved at https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm.

38.    Attached hereto as **Exhibit 3** are search results from this FDA database, showing that the search term "Celsius" "did not return any results."

39.    Thus, Celsius failed to obtain FDA approval prior to marketing, distributing, and selling Live Fit.

## VII.    LIVE FIT IS AN UNAPPROVED NEW DRUG.

40.    "The term 'drug' means . . . (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (C) articles (other than food) intended to affect the structure or any function of the body of man or other animals." 21 U.S.C. § 321(g)(1).

41.    Here, Live Fit is a "drug" because it is advertised as a product which will affect the structure or function of the body and cure, mitigate, treat, or prevent disease.

42.    The claims on the packaging of Live Fit, Defendant's website, and Defendant's Amazon pages for Live Fit render it an unapproved new drug.

43.    The FDA has determined that the following claims, which are similar to those Defendant made regarding Live Fit constitute unlawful un approved new drug claims:

- "'Our natural blend of ingredients can benefit you by . . . [s]uppressing your appetite . . . [b]oosts your metabolism .. . [b]urn fat & calories . . . [i]ncrease energy levels . . .'" (**Exhibit 4**, FDA Warning Letter to Genesis Nutrition Ultra Slim );

7

- "'Benefits . . . appetite suppression . . . reduce bloating . . . burns fat . . . reduce inches . . .potentiates weight loss . . . improves metabolism'" (**Exhibit 4**, FDA Warning Letter to Genesis Nutrition Ultra Slim);

- "'It is a totally natural herbal supplement [ . . . ] that" "'inhibits appetite, burns fat,'" "'accelerates metabolism'" "'and increase your energy.'" (**Exhibit 5**, FDA Warning Letter to Je Dois Lavoir LLC);

- "How does this capsule work? . . . Appetite Control . . . Accelerates metabolism . . . Increase your energy . . .Causes satiety . . . Burn fat'" (**Exhibit 5**, FDA Warning Letter to Je Dois Lavoir LLC);

- "'Green Coffee Beans … use of chlorogenic acid from green coffee bean extracts as an important inhibitor of diet-related obesity and obesity-related metabolic syndrome … [and] promote significant weight loss in individuals who suffer from morbid obesity.'" (**Exhibit 6**, FDA Warning Letter to TEK Naturals).

44.    A "new drug" is any drug "not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the condition prescribed, recommended, or suggested in the labeling thereof . . . ." 21 U.S.C. § 321(p)(1). Here, Live Fit is a "new drug" within the meaning of the FDCA because it is not generally recognized as safe and effective for its intended uses. See 21 C.F.R. § 330.1.

45.    Celsius has not received approval from the FDA to sell Live Fit.

46.    The sale of unapproved new drugs is illegal and dangerous. First, consumers risk purchasing and using a product that will endanger their health. Second, consumers risk purchasing a product that will not effectively treat their condition, forgoing actual treatment of that condition in lieu of an unapproved new drug which may not treat their condition. The FDA's regulatory regimen ensures that such products are not illegally marketed

47.    Defendant's failure to comply with these regulations puts consumers at risk and gives Celsius an unfair advantage over competitors that do commit the time and expense of complying with FDA statutes and regulations.

48.    Live Fit does not qualify for the reduced level of regulation applicable to certain nutrition supplement products for several reasons. Live Fit's label, website, and

8

marketing materials neither describe the role of any nutrient or dietary ingredient intended to affect the structure or function in humans, characterize the documented mechanism by which any nutrient or dietary ingredient acts to maintain such structure or function, nor describe general well-being from consumption of any nutrient or dietary ingredient. 21 U.S.C. § 343(r)(6)(A).

49.    California similarly prohibits the sale of unapproved new drugs. Health & Safety Code § 111550.

## VIII.    DEFENDANT'S ADVERTISING FOR LIVE FIT IS FALSE AND MISLEADING, RENDERING THE PRODUCTS MISBRANDED.

50.    It is unlawful to manufacture or sell any drug that is misbranded. 21 U.S.C. § 331(a), (b), (c), & (g).

51.    A drug is misbranded "[i]f its labeling is false or misleading in any particular." 21 U.S.C. § 352(a)(1).

If an article is alleged to be misbranded because the labeling or advertising is misleading, then in determining whether the labeling or advertising is misleading there shall be taken into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material in the light of such representations or material with respect to consequences which may result from the use of the articles to which the labeling or advertising relates under the conditions of use prescribed in the labeling or advertising thereof or under such conditions of use as are customary or usual.

21 U.S.C. § 321(n).

52.    Defendant's deceptive efficacy representations regarding Live mean the product is misbranded under 21 U.S.C. § 352(a)(1) and also violated Cal. Health & Safety Code § 110100 (adopting all FDA labeling regulations as state regulations), § 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded."), § 111330 (drug label misbranded if false or misleading in any particular), and further violated Cal. Bus. & Prof. Code § 17200 (Unfair Competition

9

Law "Fraudulent" Prong) and Cal. Civ. Code § 1750 (CLRA).

53.    Plaintiff used Live Fit, as directed, but it failed to deliver the advertised benefits.

54.    Because Live Fit claims to treat conditions not amenable to self-diagnosis, directions are not and likely cannot be written such that a layperson can safely use this product to treat those conditions. The label of Live Fit therefore lacks "adequate directions for use," rendering the products misbranded. 21 U.S.C. § 352(f)(1); see also 21 C.F.R. § 201.5 ("'Adequate directions for use' means directions under which the layman can use a drug safely and for the purposes for which it is intended.").

## IX.    DEFENDANT SOLD LIVE FIT IN PACKAGING BEARING UNPERMITTED HEALTH CLAIMS.

55.    In addition to marketing Live Fit with deceptive and unlawful "drug" claims, Defendant labels and markets Live Fit with an unpermitted health claim.

56.    Specifically, Defendant claims that Live Fit contains "Chromium," which Defendant asserts is "[k]nown to help control hunger" and which "normalizes blood sugar levels and helps enhance the metabolism of proteins, carbohydrates, and lipids."

57.    "Based on the review of the strength of the total body of publicly available scientific evidence," the FDA has concluded that "there is no credible scientific evidence for the" claim that chromium "may reduce the risk of insulin resistance."[3]

58.    Further, the FDA has determined that the only health claim a manufacturer may make, with respect to Chromium, is:

> One small study suggests that chromium picolinate may reduce the risk of insulin resistance, and therefore possibly may reduce the risk of type 2 diabetes. FDA concludes, however, that the existence of such a relationship between chromium picolinate and either insulin resistance or type 2 diabetes is highly

---

[3] U.S. Food & Drug Admin., Qualified Health Claims: Letter of Enforcement Discretion - Chromium Picolinate and Insulin Resistance (Docket No. 2004Q-0144), https://tinyurl.com/2s4c9m5c.

uncertain.

*Id.*

59.    Here, Defendant's chromium claim is unsupported and unpermitted. Further, the claim fails to include the FDA's language.

## X.    DEFENDANT'S PRACTICES WERE "UNFAIR" WITHIN THE MEANING OF THE UNFAIR COMPETITION LAW.

60.    Defendant's practices as described herein are "unfair" within the meaning of the California Unfair Competition Law because Celsius's conduct is immoral, unethical, unscrupulous, and substantially injurious to consumers, and the utility of this conduct to Defendant does not outweigh the gravity of the harm to Defendant's victims.

61.    In particular, while Defendant's marketing of Live Fit with deceptive efficacy and "drug" claims as defined by 21 U.S.C. § 321(g) and absent FDA approval to do so allowed Celsius to realize higher profit margins than if it did not use unlawful marketing tactics, this utility is small and far outweighed by the gravity of the economic harm and potential physical harm Defendant inflicts upon consumers. Further, the injury to consumers from Defendant's practices is substantial, not outweighed by benefits to consumers or competition, and not an injury that consumers themselves could reasonably have avoided.

62.    At all relevant times, Celsius was aware that its marketing of Live Fit violated FDA regulations and California law.

63.    As a supplement producer, Defendant had a continuing and affirmative moral and legal obligation to refrain from marketing and selling supplements with claims that violate FDA regulations and California law.

64.    Class members had no duty and no reason to inquire as to whether Live Fit was marketed in violation of state and federal food and supplement safety laws. California, as a matter of economic regulation, places the burden of ensuring that supplements are safe, effective, and sold in compliance with FDA regulations and California law, on their manufacturers, not the general public.

65.    Reasonable consumers, including Plaintiff, had no reason to suspect Celsius's unfair competition and violations of federal and state law prohibiting the sale of unapproved and misbranded drugs.

66.    Celsius owed a special duty to Plaintiff and all Class Members, akin to a fiduciary duty, which it violated by marketing Live Fit with claims that suggest the products can affect the structure or function of the human body or can treat, mitigate, or cure disease without obtaining FDA approval to do so.

67.    During the entire Class Period, Celsius was aware that its conduct was oppressive and cruel, causing economic injury and discouraging consumers from seeking medically proven treatments, yet consciously continued these acts for years while knowing the extent of the harm it was causing. Equity and the public policy of California, embodied in its statutes, jointly demand, in such circumstance, that laches and tolling cannot apply in such a way to permit Defendant to continue to enjoy the fruits of its intentional, cruel, oppressive, and unlawful acts.

## XI.    DEFENDANT'S PRACTICES WERE "UNLAWFUL" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW.

68.    Defendant's practices as described herein are "unlawful" within the meaning of the California Unfair Competition Law because the marketing, sale, and distribution of Live Fit violates the Federal Food, Drug, and Cosmetic Act, as well as California's Sherman Food, Drug, and Cosmetic Law.

69.    Celsius's unlawful marketing and advertising of Live Fit constitutes a violation of the FDCA and California food and drug law and, as such, violated the "unlawful" prong of the UCL.

70.    Defendant's unlawful acts allowed it to sell more units of Live Fit than it would have otherwise, and at a higher price and higher margin.

71.    In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

12

72. Plaintiff also seeks an order for the disgorgement and restitution of all revenue received by Defendant from the sale of Live Fit.

## XII. PLAINTIFF'S PURCHASE OF LIVE FIT AND RELATED INJURY.

73. Plaintiff Shaianne Starks purchased Celsius Live Fit from Sam's Club during the class period, including on March 18, 2023.

74. When Plaintiff purchased Live Fit, she was seeking a safe and effective weight loss and fat burning solution which was sold in compliance with FDA regulations and California law.

75. Plaintiff read and relied on, for her purchases, the product's packaging and the misrepresentations made by Defendant and the efficacy messages they conveyed, which were substantial factors in Plaintiff's purchases.

76. Plaintiff purchased Live Fit with the natural assumption that products sold in stores and online by large companies would be sold in compliance with FDA regulations and California law.

77. Plaintiff suffered economic injury when she purchased Live Fit because the product was sold in violation of federal regulations and California law and because Live Fit fails to deliver the advertised benefits.

78. Plaintiff would not have purchased Live Fit had she known that that product was not safe and effective and was sold in violation of federal and California law.

79. Live Fit was offered for sale in violation of California and federal law and has a value of $0 because it is both illegal and ineffective.

80. Plaintiff would consider purchasing Live Fit in the future if she could be assured that the product is (1) safe and effective and (2) sold in compliance with all FDA regulations and California law.

## XIII. CLASS ACTION ALLEGATIONS

81. Plaintiff brings this action on behalf of herself, and all others similarly situated (the "Class"), excluding Defendant's officers, directors, and employees, and the Court, its officers, and their families. The Class is defined as:

13

All individuals who purchased Live Fit in the United States for their own personal or household use, and not for resale, from November 24, 2022 to the present.

82.    Questions of law and fact common to Plaintiff and the Class include:

i.  Whether Celsius communicated efficacy messages through Live Fit's labeling, packaging, website, and Amazon page;

ii.  Whether those messages were material, or likely to be material, to a reasonable consumer;

iii.  Whether those messages were false, at variance with the truth, misleading, likely to deceive, and/or had the capacity to deceive the public and/or a reasonable consumer;

iv.  Whether Celsius fraudulently omitted material information in advertising Live Fit as safe and effective;

v.  Whether Celsius sold and distributed Live Fit to the public in misleading packaging that was likely to deceive the public;

vi.  Whether Live Fit is an unapproved new drug;

vii.  Whether Celsius's advertising for Live Fit violates the CLRA;

viii.  Whether Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers;

ix.  Whether Defendant's conduct violated public policy as declared by specific constitutional, statutory, or regulatory provisions;

x.  Whether the injury to consumers from Defendant's practices is substantial;

xi.  Whether Defendant's conduct constituted a violation of the unfair prong of California's Unfair Competition Law;

xii.  Whether Defendant's conduct constituted a violation of the unlawful prong of California's Unfair Competition Law;

xiii.  Whether Defendant's conduct constituted a violation of the fraudulent prong of California's Unfair Competition Law;

xiv.  Whether the slight utility Defendant realized as a result of its conduct outweighs the gravity of the harm the conduct caused to its victims;

xv.  Whether the injury to consumers from Defendant's practices is outweighed by benefits to consumers or competition;

14

  xvi. Whether Class members are entitled to restitution and/or damages;

  xvii. Whether Class members are entitled to an injunction and, if so, its terms; and

 xviii. Whether Class members are entitled to any further relief.

83. By purchasing Live Fit, all Class members were subjected to the same wrongful conduct.

84. Plaintiff's claims are typical of the Class's claims because all Class members were subjected to the same economic harm when they purchased Live Fit and suffered economic injury.

85. Plaintiff will fairly and adequately protect the interests of the Class, has no interests that are incompatible with the interests of the Class, and has retained counsel competent and experienced in class litigation.

86. The Class is sufficiently numerous, as it includes thousands of individuals who purchased Live Fit during the Class Period.

87. Class representation is superior to other options for the resolution of the controversy. The relief sought for each Class member is small, as little as $3 for some Class members. Absent the availability of class action procedures, it would be infeasible for Class members to redress the wrongs done to them.

88. Questions of law and fact common to the Class predominate over any questions affecting only individual members.

**First Cause of Action**

**Unfair Competition Law, Unfair Prong**

**Bus. & Prof. Code §§ 17200 *et seq.***

89. In each of her causes of action, Plaintiff realleges and incorporates by reference each and every allegation contained elsewhere in the Complaint, as if fully set forth herein.

90. The business practices and omissions of Defendant as alleged herein constitute "unfair" business acts and practices in that Defendant's conduct is immoral,

15

unethical, unscrupulous, and substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to Defendant's victims.

91.    Further, Defendant's practices were unfair because they violated public policy as declared by specific constitutional, statutory, or regulatory provisions, including those embodied in the FDCA and the California Health and Safety Code.

92.    Moreover, Defendant's practices were unfair because the injury to consumers from Defendant's practices was substantial, not outweighed by benefits to consumers or competition, and not one that consumers themselves could reasonably have avoided or should be obligated to avoid.

## Second Cause of Action

## Unfair Competition Law, Unlawful Prong

## Bus. & Prof. Code §§ 17200 *et seq.*

93.    Defendant has made and distributed, in interstate commerce and in this county, products that were marketed with unlawful "drug claims" without obtaining FDA approval to do so.

94.    Defendant's conduct violated the following portions of the Federal Food, Drug, and Cosmetic Act ("FDCA"):

- **21 U.S.C. § 331(a)**, prohibiting the "introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded";

- **21 U.S.C. § 331(b)**, prohibiting the "adulteration or misbranding of any food, drug, device, tobacco product, or cosmetic in interstate commerce";

- **21 U.S.C. § 352(f)(1)**, requiring drugs to have adequate directions for use; and

- **21 U.S.C. § 355(a)**, prohibiting the sale of unapproved new drugs.

95.    Defendant's conduct also violates other provisions of California law including, *inter alia:*

- **Health & Safety Code § 110100 et seq.**, which adopts all FDA regulations as state regulations;

- **Health & Safety Code § 111330**, "Any drug or device is misbranded if its labeling is false or misleading in any particular.";

- **Health & Safety Code § 110398**, "It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.";

- **Health & Safety Code § 111440**, "It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any drug or device that is misbranded.";

- **Health & Safety Code § 111445**, "It is unlawful for any person to misbrand any drug or device.";

- **Health & Safety Code § 111450**, "It is unlawful for any person to receive in commerce any drug or device that is misbranded or to deliver or proffer for delivery any drug or device.";

- **Health & Safety Code § 111550**, prohibiting sale of new drug unless approved under 21 U.S.C. § 355;

- **Civ. Code § 1770(a)**, prohibiting misleading practices in relation to the sale of goods;

- **Bus. & Prof. Code § 17200 et seq.**, prohibiting unfair, unlawful, and fraudulent business activity.

96.     The fraudulent marketing and advertising of Live Fit described herein constituted violations of the FDCA and the Sherman Law and, as such, violated the "unlawful" prong of the UCL.

97.     Defendant employed unlawful marketing tactics to induce Plaintiff and members of the Class to purchase products that were of lesser value and quality than advertised and which were not safe and effective, or FDA approved.

98.     Had Plaintiff known that Live Fit was offered for sale in violation of California and federal regulations, she would not have purchased Live Fit.

99.     Had class members known that Live Fit was offered for sale in violation of California and federal regulations, they would not have Live Fit.

100.     Plaintiff suffered injury in fact and lost money or property as a result of Defendant's unlawful conduct: she was denied the benefit of the bargain when she decided to purchase Live Fit over competing products, which are legal, less expensive, and do not make drug claims on their packaging and web properties.

17

101.   Defendant's unlawful acts allowed it to sell more units of Live Fit than it would have otherwise, and at a higher price, and higher margin.

102.   Had Plaintiff been aware of Defendant's unlawful marketing tactics, she would not have purchased Live Fit, and had Defendant not advertised Live Fit in an unlawful manner, Plaintiff would have paid less for them.

103.   In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and fraudulent acts and practices; requiring Defendant to commence a corrective advertising campaign; and awarding the class restitution of all monies Defendant obtained from the sale of Live Fit.

## Third Cause of Action

### Unfair Competition Law, Fraudulent Prong

### Bus. & Prof. Code §§ 17200, *et seq*.

104.   Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

105.   The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "fraudulent" business acts and practices in that Defendant's conduct has a likelihood, capacity or tendency to deceive Plaintiff, the Class, and the general public.

106.   Defendant leveraged its deception to induce Plaintiff and members of the Class to purchase products that were of lesser value and quality than advertised.

107.   Plaintiff suffered injury in fact and lost money or property as a result of Defendant's deceptive advertising: she was denied the benefit of the bargain when she decided to purchase Live Fit over competing products, which are legal, less expensive, and do not make misleading or false drug claims on their packaging.

108.   Had Plaintiff been aware of Defendant's false and misleading advertising tactics, she would not have purchased Live Fit, and had Defendant not advertised Live Fit in a fraudulent manner, Plaintiff would have paid less for it.

18

109.   In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and fraudulent acts and practices; requiring Defendant to commence a corrective advertising campaign; and awarding the Class restitution of all monies Defendant obtained from the sale of Live Fit.

**Fourth Cause of Action**

**Consumer Legal Remedies Act**

**Civil Code §§ 1750,** ***et seq.***

110.   The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

111.   Defendant's policies, acts and practices were designed to, and did, result in the purchase and use of Live Fit for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

- **Civil Code § 1770(a)(5)**, representing that goods have characteristics, uses, or benefits which they do not have;
- **Civil Code § 1770(a)(7)**, representing that goods are of a particular standard, quality, or grade if they are of another;
- **Civil Code § 1770(a)(9)**, advertising goods with intent not to sell them as advertised; and
- **Civil Code § 1770(a)(16)**, representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

112.   As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

113.   As a further result, Plaintiff and the Class have suffered damages, and because the conduct was deliberate, immoral, oppressive, made with malice and contrary to public policy, they are entitled to punitive or exemplary damages.

114.   Pursuant to section 1782 et seq. of the CLRA, Plaintiff notified Defendant in

19

writing by certified mail of the particular violations of § 1770 of the Act as to Live Fit and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.

115.    Defendant received Plaintiff's written notice on October 6, 2023.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself, all others similarly situated, and the general public, prays for judgment against Celsius as follows:

A.    An order confirming that this class action is properly maintainable as a class action as defined above, appointing Plaintiff and her undersigned counsel to represent the Class, and requiring Celsius to bear the cost of class notice;

B.    An order requiring Defendants pay $500 in restitution, damages, and interest to Plaintiff;

C.    An order requiring Defendants pay $60 million or a greater amount to be proven at trial in restitution to Class members, and $4,000 to Plaintiff as an incentive award, or such greater amount the Court deems fair and reasonable;

D.    An order requiring Defendant to pay punitive damages in an amount to be determined at trial;

E.    An order requiring Defendant to disgorge any benefits received from Plaintiff and the Class and its unjust enrichment realized as a result of Defendant's improper and misleading advertising, marketing, sale, and distribution of Live Fit;

F.    An Order declaring the conduct complained of herein violates the Unfair Competition Law;

G.    An order requiring Defendant to cease and desist its deceptive, unconscionable, fraudulent, and unlawful practices;

H.    An order requiring Celsius to conduct a corrective advertising campaign;

I.    Declaratory relief that the conduct alleged herein is unlawful;

J.    Pre-judgment, and post-judgment interest; and

K.    An award of attorney fees and costs.

## **NO JURY DEMAND**

Plaintiff makes no jury demand.

1 | DATED: January 26, 2024

Respectfully Submitted,

s/Gregory S. Weston
GREGORY S. WESTON

**Counsel for Plaintiff**

21

# EXHIBIT 1



PRODUCTS    STORE LOCATOR    ABOUT ▾    CONTACT US    BUY ONLINE



# SPARKLING COSMIC VIBE

CELSIUS Cosmic Vibe is a vibrant and juicy fruit punch flavor. Every sip of this flavor feels like a new infinite & refreshing sensory experience with exotic and sweet notes of strawberry, lemon, orange, mandarin & blueberry; the unexpected cosmic mystery of our new flavor is inspired by a mystic galaxy. CELSIUS Cosmic Vibe is out of this world!

**BUY NOW**    +

SCROLL TO LEARN MORE



EXPLORE ALL 20 FLAVORS

| | |
|---|---|
| Sparkling Cosmic Vibe | Sparkling Oasis Vibe |
| Sparkling Green Apple Cherry | Sparkling Fantasy Vibe |
| Sparkling Lemon Lime | Sparkling Arctic Vibe |
| Sparkling Strawberry Lemonade | Sparkling Mango Passionfruit |
| Sparkling Tropical Vibe | Sparkling Strawberry Guava |
| Sparkling Peach Vibe | Sparkling Fuji Apple Pear |
| Sparkling Orange | Sparkling Kiwi Guava |
| Sparkling Wild Berry | Sparkling Watermelon |
| Sparkling Grape Rush | Sparkling Cola |
| Raspberry Acai Green Tea | Peach Mango Green Tea |

    

VIEW ALL CELSIUS PRODUCTS

# INGREDIENTS

## GREEN TEA EXTRACT

The extract used contains a specific ratio of EGCG (epigallocatechin gallate) — the compound that scientists have found boosts your metabolism and helps your body burn more calories.



## GUARANA SEED EXTRACT

Unlike most guarana drinks, CELSIUS uses the seeds (instead of the roots), which contain over twice the amount of caffeine than the average coffee bean.



## GINGER ROOT

Ginger root has a wonderful spicy flavor, and it's known to help support the process of thermogenesis as well as create a positive effect on digestive systems.



## VITAMIN B

B-Vitamins are essential for energy production and they help regulate cell health as well as metabolism. They also help support your adrenal glands to help you recover from fatigue.



## VITAMIN C

Also known as an ascorbic acid, vitamin C is an essential nutrient that aids the immune system and helps with tissue repair and the enzymatic production of certain neurotransmitters.



## CHROMIUM

Known to help control hunger, chromium is an essential trace mineral that normalizes blood sugar levels and helps enhance the metabolism of proteins, carbohydrates, and lipids.



   

We use cookies, to personalize your site experience. By continuing to use and browse this site you agree to our Privacy Policy. As an Amazon Associate, CELSIUS earns from qualifying purchases. ✕

# EXHIBIT 2



## CELSIUS ESSENTIAL ENERGY

**CELSIUS** provides all the Essential Energy you need without any of the bad stuff. **CELSIUS** is functional energy, made with premium and proven ingredients. Available in a variety of both sparkling and non-carbonated flavors, **CELSIUS** was created to **inspire** people to LIVE FIT, exceed their goals, elevate their everyday lives and achieve their personal bests.

**CELSIUS** is packed with 7 essential vitamins, contains zero sugar, no artificial colors, no aspartame and no high fructose corn syrup.



### CELSIUS Contains 7 Essential Vitamins & Minerals

**VITAMIN B:** B-Vitamins are essential for energy production and they help regulate cell health as well as metabolism. They also help support your adrenal glands to help you recover from fatigue.

**VITAMIN C:** Also known as an ascorbic acid, vitamin C is an essential nutrient that aids the immune system and helps with tissue repair and the enzymatic production of certain neurotransmitters.

**CHROMIUM:** Known to help control hunger, chromium is an essential trace mineral that normalizes blood sugar levels and helps enhance the metabolism of proteins, carbohydrates, and lipids.



### Ginger Root

**Ginger Root** has a wonderful spicy flavor, and it's known to help support the process of thermogenesis as well as create a positive effect on digestive systems.



### Green Tea Extract

The **Green Tea Extract** used in CELSIUS contains a specific ratio of EGCG (epigallocatechin gallate). Scientists have found that this special compound can help boost metabolism.



### Guarana Seed Extract

Found in the Amazon rainforest, **Guarana** provides a natural source of caffeine. Unlike most guarana drinks, CELSIUS uses the seeds (instead of the roots), which contain over twice the amount of caffeine than the average coffee bean.



### Biotin

The MetaPlus formula in **CELSIUS** contains **Biotin.** Your body needs biotin to metabolize carbohydrates, fats, and amino acids, which are the vital building blocks of proteins.

# EXHIBIT 3


**FDA** U.S. FOOD & DRUG
ADMINISTRATION

🔍 Search   ≡ Menu

Home / Drug Databases / Drugs@FDA

# Drugs@FDA: FDA-Approved Drugs

Share   Tweet   LinkedIn   Email   Print

Home | Previous Page

**Modify Your Search**

### Your Drugs@FDA Search Did Not Return Any Results

Your search may not have returned results because of one of these reasons (see FAQ for more search strategies to find approved drugs in Drugs@FDA):

- Drugs@FDA includes the drug you are looking for, but the drug's name was **not spelled correctly**. For your next search:
  - If you are not sure of the spelling of the drug name, use Browse by Drug Name on the Drugs@FDA home page to find drug names in alphabetical order.
  - If applicable, ensure that you include special characters or spaces that reside within the drug name in your search. For example, if you are searching for "H.P. ACTHAR GEL" or "X-TROZINE L.A." include the periods and/or the hyphen.
  - If you know part of the spelling of the drug name, include at least three characters from the drug name in the search box.

- Drugs@FDA does **not** include the drug you searched for because the drug:
  - Does not require FDA approval to be sold in the United States (Drugs@FDA only includes approved drugs). For example:
  - Over-the-counter (OTC) drugs marketed under the monograph system (See OTC Drug Monograph Process for more information.)
  - Dietary supplements (See Dietary Supplements for more information.)
  - Is approved by FDA's Center for Biologics Evaluation and Research. These FDA-approved drugs are not included in Drugs@FDA. These drugs include vaccines, allergenic products, blood and blood products, plasma derivatives, cellular and gene therapy products, plasma volume expanders, and platelet additive solutions. (See CBER's approved drugs.)
  - Is not marketed in the United States (for example, investigational drugs).
  - Is not for human use (for example, animal prescription and animal OTC drugs). (Drugs@FDA does not include animal drugs; for animal drugs see Animal Drugs@FDA.)

- Your Application Number search did **not** include the appropriate number of digits for the application.

---

FDA Archive

About FDA

Accessibility

Visitor Information

Website Policies / Privacy

No FEAR Act

Vulnerability Disclosure Policy

FOIA

HHS.gov

USA.gov

Contact FDA     



📞 1-888-INFO-FDA (1-888-463-6332)

# EXHIBIT 4

**WARNING LETTER**

# Genesis Nutrition Ultra Slim dba Genesis Ultra Slim

### MARCS-CMS 616040 — AUGUST 06, 2021

---

**Delivery Method:**

VIA Electronic Mail

**Product:**

Drugs

---

**Recipient:**

Maria Gonzalez

Public Relations Contractor

Genesis Nutrition Ultra Slim dba Genesis Ultra Slim

10108 NW 77th Street
Doral, FL 33178
United States

✉ info@genesisultraslim.com (mailto:info@genesisultraslim.com)

✉ mgonzalez@genesisultraslim.com (mailto:mgonzalez@genesisultraslim.com)

✉ ketoultraslimplus@gmail.com  (mailto:ketoultraslimplus@gmail.com )

**Issuing Office:**

Office of Pharmaceutical Quality Operations, Division II

United States

---

August 6, 2021

Case #:   616040

**WARNING LETTER**

Ms. Gonzalez:

This letter is to advise you that the United States Food and Drug Administration (FDA) has reviewed your firm's websites at www.fastweightlossgarcinia.com and www.ketoultraslimplus.com between June and July 2021 and has determined that your firm takes orders there for "Genesis Ultra Gold."  We have also reviewed your social media websites at www.facebook.com/genesisultraslim, https://twitter.com/genesis_slim and www.instagram.com/genesis_slim/; these

social media websites direct consumers to your website www.fastweightlossgarcinia.com[1] to purchase your products. The claims on your websites and social media websites establish that your "Genesis Ultra Slim Gold" product is intended for weight loss. Therefore, this product is an unapproved new drug sold in violation of sections 505(a) and 301(d) of the Federal Food, Drug, and Cosmetic Act (the FD&C Act), 21 U.S.C. 355(a) and 331(d), and a misbranded drug sold in violation of sections 502 and 301(a) of the FD&C Act, 21 U.S.C. 502 and 331(a). You can find the FD&C Act and FDA regulations through links on FDA's home page at www.fda.gov (http://www.fda.gov).

FDA confirmed through laboratory analysis that a sample of your "Genesis Ultra Slim Gold" contains undeclared sibutramine and phenolphthalein. Sibutramine is the active pharmaceutical ingredient in Meridia, a new drug approved by FDA for marketing in 1997 for prescription treatment of obesity and, subsequently, withdrawn from the United States market on December 21, 2010 after clinical data indicated sibutramine poses an increased risk of heart attack and stroke.  Phenolphthalein is a chemical that is not an active ingredient in any approved drug in the United States.  Studies have indicated that it presents a cancer-causing risk.

FDA has issued a warning to consumers not to use "Genesis Ultra Slim Gold" (see Genesis Ultra Slim Gold Immediate Public Notification).

**Unapproved New Drug**

You market "Genesis Ultra Slim Gold" as a dietary supplement. However, under section 201(ff)(3)(B)(ii) of the FD&C Act, 21 U.S.C. 321(ff)(3)(B)(ii), a dietary supplement may not include an article authorized for investigation as a new drug for which substantial clinical investigations have been instituted and made public, unless the article was marketed as a dietary supplement or food before it was authorized for investigation as a new drug.

The investigational new drug (IND) application for Meridia (sibutramine) was received by FDA on December 24, 1985, and sibutramine became authorized for investigation as a new drug under an IND on January 23, 1986.  When Meridia was approved for marketing as a new drug in the United States, the existence of substantial completed clinical investigations of sibutramine became public.  Based on the information available to FDA, sibutramine was not marketed as a dietary supplement or as a food until after it was authorized for investigation as a new drug.  Therefore, "Genesis Ultra Slim Gold," which contains sibutramine, is excluded from the definition of a dietary supplement under section 201(ff)(3)(B)(ii) of the FD&C Act.

Your "Genesis Ultra Slim Gold," is an article (other than food) intended to affect the structure or function of the body and, thus, is a drug as defined by section 201(g)(1) of the FD&C Act, 21 U.S.C. 321(g)(1).  Some examples of claims observed on your websites and social media websites that establish the intended use of your product as a drug include, but may not limited to, the following:

On your websites www.fastweightlossgarcinia.com and www.ketoultraslimplus.com

- "Our natural blend of ingredients can benefit you by . . . [s]uppressing your appetite . . . [b]oosts your metabolism . . . [b]urn fat & calories . . . [i]ncrease energy levels . . ."
- "Complete blend of 100% natural ingredients formulated to help you lose weight . . ."

On your website www.fastweightlossgarcinia.com

- "Konjac root . . . slows the rate of digestion and the absorption of both fat and carbohydrates."
- "[P]ineapple is anti-inflammatory . . ."
- "Dry Green Apple Powder . . . has detoxifying properties because of the diuretic effect and it also helps relieve constipation."

On your Facebook Account www.facebook.com/genesisultraslim

- January 22, 2020 posting - " Genesis UltraSlim Gold . . . Lose up to 20 pounds in just 4 weeks . . . Promotes weight loss"

On your Instaram Account www.instagram.com/genesis_slim/

- May 7, 2021 posting - "Benefits . . . appetite suppression . . . reduce bloating . . . burns fat . . . reduce inches . . . potentiates weight loss . . . improves metabolism"

Your "Genesis Ultra Slim Gold" product is not generally recognized as safe and effective for its above referenced uses and, therefore it is a "new drug" under section 201(p) of the FD&C Act, 21 U.S.C. 321(p).  With certain exceptions not applicable here, new drugs may not be legally introduced or delivered for introduction into interstate commerce without prior approval from the FDA, as described in sections 301(d) and 505(a) of the FD&C Act, 21 U.S.C. 331(d) and 355(a). FDA approves a new drug on the basis of scientific data and information demonstrating that the drug is safe and effective. There is no FDA-approved application in effect for your product.

**Misbranded Drug**

Your "Genesis Ultra Slim Gold" product is misbranded under section 502(f)(1) of the FD&C Act, 21 U.S.C. 352(f)(1), in that the labeling for this drug fails to bear adequate directions for use.  "Adequate directions for use" means directions under which a layman can use a drug safely and for the purposes for which it is intended. (See 21 CFR 201.5).  It is impossible to write "adequate directions for use" for "Genesis Ultra Slim Gold" for at least two reasons:  1) prior to withdrawal of Meridia's approval, FDA approval of sibutramine was limited to use under the professional supervision of a practitioner licensed by law to administer such drugs and 2) FDA approval of Meridia was withdrawn because of serious safety risks.  As such, the labeling of "Genesis Ultra Slim Gold" fails to bear adequate directions for its intended uses, causing it to be misbranded under section 502(f)(1) of the FD&C Act.  Under 21 CFR 201.100(c)(2) and 201.115, FDA-approved prescription drugs that bear their FDA-approved labeling are exempt from the requirements that they bear adequate directions for use by a layperson. However, your "Genesis Ultra Slim Gold" product is not exempt from the requirement that its labeling bears adequate directions for use because no FDA-approved application is in effect for this product.

Additionally, under section 502(a) of the FD&C Act, 21 U.S.C. 352(a), a drug is misbranded if its labeling is false or misleading in any particular.  Section 201(n) of the FD&C Act, 21 U.S.C. 321(n) provides that, in determining whether an article's labeling or advertising "is misleading there shall be taken into account . . . not only representations made or suggested . . . but also the extent to which the labeling or advertising fails to reveal facts material in light of such representations . . .." Your "Genesis Ultra Slim Gold" product is misbranded under section 502(a) of the FD&C Act because the labeling fails to reveal its sibutramine and phenolphthalein content, which are material facts with respect to consequences that may result from the use of this product.  As described above, sibutramine and phenolphthalein may pose health risks to consumers which are only compounded by the fact that neither ingredient is declared on the label.

"Genesis Ultra Slim Gold" is also misbranded under section 502(f)(2) of the FD&C Act, 21 U.S.C. 352(f)(2), because the product labeling lacks adequate warnings for the protection of users.  As noted, there is potential for adverse events associated with the use of this product, particularly since someone who takes it would be unaware of the presence of the undeclared ingredients.

Likewise, "Genesis Ultra Slim Gold" is misbranded under section 502(j) of the FD&C Act, 21 U.S.C. 352(j), because it is dangerous to health when used in the dosage or manner recommended in the labeling.  As previously noted, sibutramine poses an increased risk of heart attack and stroke.

The introduction or delivery for introduction into interstate commerce of this misbranded drug product is prohibited under section 301(a) of the FD&C Act, 21 U.S.C. 331(a).

**Conclusion**

This letter is not intended to be an all-inclusive statement of violations that may exist in connection with your products. You are responsible for investigating and determining the causes of any violations and for preventing their recurrence or the occurrence of other violations. It is your responsibility to ensure that your firm complies with all requirements of federal law, including FDA regulations.

This letter notifies you of our concerns and provides you an opportunity to address them. Failure to adequately address this matter may result in legal action including, without limitation, seizure and/or injunction.

Your websites, www.fastweightlossgarcinia.com and www.ketoultraslimplus.com, also market the following products: Genesis Ultra Slim Original Formula, Genesis Ultra Slim Fat Burner, Genesis Ultra Slim Colon Cleanse, Garcinia Max, Genesis Ultra Slim Platinum, Keto Ultra Slim Plus, and Keto 15 Day Cleanse. While FDA has not tested these products marketed by your firm, you are responsible for ensuring that they do not contain undeclared ingredients.

A full list of all tainted products discovered by FDA can be found at http://www.accessdata.fda.gov/scripts/sda/sdNavigation.cfm?sd=tainted_supplements_cder.

Please notify FDA in writing, within fifteen working days of receipt of this letter, of the specific steps you have taken to address any violations.  Include an explanation of each step being taken to prevent the recurrence of violations, as well as copies of related documentation.  If you cannot complete corrective actions within fifteen working days, state the reason for the delay and the time within which you will do so. If you believe that your products are not in violation of the FD&C Act, include your reasoning and any supporting information for our consideration.

Your written notification should refer to case # **616040** .

Please electronically submit your reply, on company letterhead, to Dayna I. Martinez, Compliance Officer, at ORAPHARM2_RESPONSES@fda.hhs.gov.  In addition, please submit a signed copy of your response to dayna.martinez@fda.hhs.gov . and john.diehl@fda.hhs.gov .

If you have questions regarding the contents of this letter, you may contact Dayna I. Martinez via phone at 787-729-8608 or email at dayna.martinez@fda.hhs.gov.

Sincerely,
/S/

John W. Diehl, M.S.
Program Division Director (Acting)
Office of Pharmaceutical Quality Operations, Division II

---

*1* Your Twitter and Facebook accounts directs consumers to www.genesisultraslim.com, which redirects to www.fastweightlossgarcinia.com.

◉ More Warning Letters (/inspections-compliance-enforcement-and-criminal-investigations/compliance-actions-and-activities/warning-letters)

# EXHIBIT 5

**WARNING LETTER**

# Je Dois Lavoir LLC

### MARCS-CMS 616016 — AUGUST 11, 2021

**Delivery Method:**

Via Email

**Product:**

Drugs

**Recipient:**

Sandra Orozco

CEO

Je Dois Lavoir LLC

(b)(6)

United States

✉ cs@jedoisavoir2020.com (mailto:cs@jedoisavoir2020.com)

✉ sorozco30@icloud.com (mailto:sorozco30@icloud.com)

**Issuing Office:**

Division of Pharmaceutical Quality Operations IV

United States

**WARNING LETTER**

August 11, 2021

Dear Ms. Orozco:

This letter is to advise you that the United States Food and Drug Administration has reviewed your website at https://jedoisavoir2020.com in June 2021 and has determined that you take orders there for "365 Skinny High Intensity." We have also reviewed your social media websites at www.facebook.com/jdl2020 and www.instagram.com/j_d_l2020; these social media websites direct consumers to your website https://jedoisavoir2020.com to purchase your products. The claims on your website and social media websites establish that your "365 Skinny High Intensity" product is intended for weight loss. Therefore, this product is an unapproved new drug sold in violation of sections 505(a) and 301(d) of the Federal Food, Drug, and Cosmetic Act (the FD&C Act), 21 U.S.C. 355(a) and 331(d), and a misbranded drug sold in violation of sections

502 and 301(a) of the FD&C Act, 21 U.S.C. 502 and 331(a). You can find the FD&C Act and FDA regulations through links on FDA's home page at www.fda.gov. (//www.fda.gov.) ☑ (http://www.fda.gov/about-fda/website-policies/website-disclaimer)

FDA confirmed through laboratory analysis that a sample of your "365 Skinny High Intensity" contains undeclared sibutramine. Sibutramine is the active pharmaceutical ingredient in Meridia, a new drug approved by FDA for marketing in 1997 for prescription treatment of obesity and, subsequently, withdrawn from the United States market on December 21, 2010 after clinical data indicated sibutramine poses an increased risk of heart attack and stroke.

FDA has issued a warning to consumers not to use "365 Skinny High Intensity" (see 365 Skinny High Intensity Immediate Public Notification).

**Unapproved New Drug**

You market "365 Skinny High Intensity" as a dietary supplement. However, under section 201(ff)(3)(B)(ii) of the FD&C Act, 21 U.S.C. 321(ff)(3)(B)(ii), a dietary supplement may not include an article authorized for investigation as a new drug for which substantial clinical investigations have been instituted and made public, unless the article was marketed as a dietary supplement or food before it was authorized for investigation as a new drug.

The investigational new drug (IND) application for Meridia (sibutramine) was received by FDA on December 24, 1985, and sibutramine became authorized for investigation as a new drug under an IND on January 23, 1986. When Meridia was approved for marketing as a new drug in the United States, the existence of substantial completed clinical investigations of sibutramine became public. Based on the information available to FDA, sibutramine was not marketed as a dietary supplement or as a food until after it was authorized for investigation as a new drug. Therefore, "365 Skinny High Intensity," which contains sibutramine, is excluded from the definition of a dietary supplement under section 201(ff)(3)(B)(ii) of the FD&C Act.

Your "365 Skinny High Intensity," is an article intended to diagnose, cure, mitigate, treat, or prevent disease and/or an article (other than food) intended to affect the structure or function of the body and, thus, is a drug as defined by section 201(g)(1) of the FD&C Act, 21 U.S.C. 321(g)(1). Some examples of claims observed on your website and social media websites that establish the intended use of your product as a drug include, but may not limited to, the following:

On your website https://jedoisavoir2020.com
• "365 Skinny High Intensity new silver label Strong Formula 2020 are [sic] giving excellent results in the loss of weight with a single capsule a day!"

On your website https://jedoisavoir2020.com and Facebook Account, www.facebook.com/jdl2020, October 19, 2020 Post
• "It is a totally natural herbal supplement for anti obesity that controls anxiety, inhibits appetite, burns fat, high cholesterol, helps with sugar levels, accelerates metabolism, eliminates toxins, reduce swelling and increase your energy."
• "How does this capsule work? . . . Appetite Control . . . Accelerates metabolism . . . Increase your energy . . . Causes satiety . . . Burn fat through the urine . . . Eliminates toxins in the skin . . . Regenerates muscle mass . . . Reduces fat deposits and cellulite . . . Increases libido . . . Balances insulin and blood sugar levels"
• "Bitter orange extract: reduces 'bad' cholesterol prevents digestive disorders and regulates bowel movement"

[sic]
• "Cassia seed: combat constipation"
• "Alism: eliminates fluid retention, reduces appetite"

Your "365 Skinny High Intensity" product is not generally recognized as safe and effective for its above referenced uses and, therefore it is a "new drug" under section 201(p) of the FD&C Act, 21 U.S.C. 321(p). With certain exceptions not applicable here, new drugs may not be legally introduced or delivered for introduction into interstate commerce without prior approval from the FDA, as described in sections 301(d) and 505(a) of the FD&C Act, 21 U.S.C. 331(d) and 355(a). FDA approves a new drug on the basis of scientific data and information demonstrating that the drug is safe and effective. There is no FDA-approved application in effect for your product.

**Misbranded Drug**

Your "365 Skinny High Intensity" product is misbranded under section 502(f)(1) of the FD&C Act, 21 U.S.C. 352(f)(1), in that the labeling for this drug fails to bear adequate directions for use. "Adequate directions for use" means directions under which a layman can use a drug safely and for the purposes for which it is intended. (See 21 CFR 201.5). It is impossible to write "adequate directions for use" for "365 Skinny High Intensity" for at least two reasons: 1) prior to withdrawal of Meridia's approval, FDA approval of sibutramine was limited to use under the professional supervision of a practitioner licensed by law to administer such drugs and 2) FDA approval of Meridia was withdrawn because of serious safety risks. As such, the labeling of "365 Skinny High Intensity" fails to bear adequate directions for its intended uses, causing it to be misbranded under section 502(f)(1) of the FD&C Act. Under 21 CFR 201.100(c)(2) and 201.115, FDA-approved prescription drugs that bear their FDA-approved labeling are exempt from the requirements that they bear adequate directions for use by a layperson. However, your "365 Skinny High Intensity" product is not exempt from the requirement that its labeling bears adequate directions for use because no FDA-approved application is in effect for this product.

Additionally, under section 502(a) of the FD&C Act, 21 U.S.C. 352(a), a drug is misbranded if its labeling is false or misleading in any particular. Section 201(n) of the FD&C Act, 21 U.S.C. 321(n) provides that, in determining whether an article's labeling or advertising "is misleading there shall be taken into account . . . not only representations made or suggested . . . but also the extent to which the labeling or advertising fails to reveal facts material in light of such representations . . .." Your "365 Skinny High Intensity" product is misbranded under section 502(a) of the FD&C Act because the labeling fails to reveal the sibutramine content, which is a material fact with respect to consequences that may result from the use of this product. As described above, sibutramine may pose health risks to consumers which are only compounded by the fact that the ingredient is not declared on the label.

"365 Skinny High Intensity" is also misbranded under section 502(f)(2) of the FD&C Act, 21 U.S.C. 352(f)(2), because the product labeling lacks adequate warnings for the protection of users. As noted, there is potential for adverse events associated with the use of this product, particularly since someone who takes it would be unaware of the presence of the undeclared ingredients.

Likewise, "365 Skinny High Intensity" is misbranded under section 502(j) of the FD&C Act, 21 U.S.C. 352(j), because it is dangerous to health when used in the dosage or manner recommended in the labeling. As previously noted, sibutramine poses an increased risk of heart attack and stroke.

The introduction or delivery for introduction into interstate commerce of this misbranded drug product is prohibited under section 301(a) of the FD&C Act, 21 U.S.C. 331(a).

**Conclusion**

This letter is not intended to be an all-inclusive statement of violations that may exist in connection with your products. You are responsible for investigating and determining the causes of any violations and for preventing their recurrence or the occurrence of other violations. It is your responsibility to ensure that your firm complies with all requirements of federal law, including FDA regulations.

This letter notifies you of our concerns and provides you an opportunity to address them. Failure to adequately address this matter may result in legal action including, without limitation, seizure and/or injunction.

We acknowledge that your firm voluntarily recalled 365 Skinny High Intensity and 365 Skinny Emergency Boutique products on August 2, 2021. You also market other products on your website https://jedoisavoir2020.com, including foods, dietary supplements, and topicals. While FDA has not tested these products marketed by your firm, you are responsible for ensuring that they do not contain undeclared ingredients.

A full list of all tainted products discovered by FDA can be found at http://www.accessdata.fda.gov/scripts/sda/sdNavigation.cfm?sd=tainted_supplements_cder (http://www.accessdata.fda.gov/scripts/sda/sdNavigation.cfm?sd=tainted_supplements_cder).

Please notify FDA in writing, within fifteen working days of receipt of this letter, of the specific steps you have taken to address any violations. Include an explanation of each step being taken to prevent the recurrence of violations, as well as copies of related documentation. If you cannot complete corrective actions within fifteen working days, state the reason for the delay and the time within which you will do so. If you believe that your products are not in violation of the FD&C Act, include your reasoning and any supporting information for our consideration.

Your response should refer to unique identifier CMS 616016 and be sent electronically to ORAPHARM4_Responses@fda.hhs.gov or mailed to:

CDR Steven E. Porter, Jr.
Director, Division of Pharmaceutical Quality Operations IV
U.S. Food and Drug Administration
19701 Fairchild Road
Irvine, CA 92612

If you have any questions regarding this letter, please contact Jamie Dion, Compliance Officer, at 303-236-3133 or by email at Jamie.Dion@fda.hhs.gov.

Sincerely,
/S/

Lance M. De Souza
Acting Director, Division of Pharmaceutical Quality Operations IV

---

 More Warning Letters (/inspections-compliance-enforcement-and-criminal-investigations/compliance-actions-and-activities/warning-letters)

# EXHIBIT 6

**WARNING LETTER**

# TEK Naturals

### MARCS-CMS 565026 — FEBRUARY 05, 2019

**Product:**

Dietary Supplements

---

**Recipient:**

Trevor Rose

CEO

TEK Naturals

1985 Riviera Dr

103-127

Mount Pleasant, SC 29464

United States

**Issuing Office:**

Center for Food Safety and Applied Nutrition

5001 Campus Drive
College Park, MD 20740-3835
United States

---

UNITED STATES OF AMERICA          DEPARTMENT OF HEALTH
FEDERAL TRADE COMMISSION      AND HUMAN SERVICES
BUREAU OF CONSUMER PROTECTIONFOOD AND DRUG ADMINISTRATION
WASHINGTON, D.C. 20580          SILVER SPRING, MD 20993


**WARNING LETTER**


VIA OVERNIGHT DELIVERY
RETURN RECEIPT REQUESTED

February 5, 2019

TEK Naturals
Trevor Rose, CEO
1985 Riviera Dr
103-127
Mount Pleasant, SC 29464

RE: 565026

Dear Mr. Rose:

This is to advise you that the U.S. Food and Drug Administration (FDA) reviewed your websites at the Internet
addresses www.burn4her.com, www.burnertek.com, www.mindignite.com, www.tekmale.com,
www.testotek.com, and www.teknaturals.com in September 2018 and has determined that you take orders
there for your products BURN4Her, BurnerTEK, Mind Ignite, TEK Male, and TestoTEK. FDA also reviewed
your social media websites at www.facebook.com/TEKNaturals and www.twitter.com/TeKNaturals, which
contain links to your website at www.teknaturals.com, and www.instagram.com/teknaturals, which contains
links to your website at www.teknaturals.com. The claims on your websites establish that these products are
drugs under section 201(g)(1)(B) of the Federal Food, Drug, and Cosmetic Act (the Act) [21 U.S.C. § 321(g)(1)
(B)] because they are intended for use in the cure, mitigation, treatment, or prevention of disease. As explained
further below, introducing or delivering these products for introduction into interstate commerce for such uses
violates the Act. You can find the Act and FDA regulations through links on FDA's home page at www.fda.gov.

Examples of some of the website claims that provide evidence that your products are intended for use as drugs
include the following:

On the "BURN4HER INGREDIENTS" page of your www.burn4her.com website:

•"BURN4HER's™ INGREDIENTS"

o "Green Tea Extract ... Green Tea's polyphenols are scientifically proven to ... reduce a woman's risk for heart
disease."
o "Green Coffee Beans ... use of chlorogenic acid from green coffee bean extracts as an important inhibitor of
diet-related obesity and obesity-related metabolic syndrome ... [and] promote significant weight loss in
individuals who suffer from morbid obesity. The extract has also shown positive effects in the regulation of
high blood pressure and as an anti-diabetic supplement."
o "Glucomannan ... reduce feelings of anxiety"
o "L-Carnitine ... is well-known for its anti-anxiety benefits."

On the "BURNERTEK INGREDIENTS" page of your www.burnertek.com website:

•"BurnerTEK includes scientifically-researched, consistent potencies of the following ... ingredients:"

o "Green Tea Extract ... possesses a wide range of therapeutic properties that are used in the treatment and
prevention of some forms of cancer, Parkinson's disease, human papilloma virus, and kidney stones."
o "Green Coffee Beans ... The extract has also shown positive effects in the regulation of high blood pressure
and as an anti-diabetic supplement."
o " . . . Glucomannan is responsible for lowered LDL cholesterol"
o "Cayenne Pepper ... has been the treatment of ear infections ... and even some forms of cancer…"
o "[T]urmeric has a significant effect on obesity and insulin resistance.... Turmeric also helps combat the
effects of obesity, notably inflammation…"
o "L-Carnitine plays a vital role in the reduction of blood glucose levels.... It has also been shown to have a
significant influence on the improvement of insulin sensitivity."
o "Vitamin B-Complex ... provid[es] a slew of benefits and therapeutic effects including ... resistance to disease,
reduction of inflammation, [and] the prevention of memory loss…"
o "Chromium Picolinate ... [is] used as a dietary supplement in the treatment and management of Type 2

Diabetes…. Chromium Picolinate supplies the body with its essential supply of elemental chromium. Elemental chromium plays a direct role in the control of LDL cholesterol, triglycerides, and indirectly prevents several types of heart disease."

On the home page of your www.mindignite.com website:

•"Mind IgniteTM is a safe and highly effective alternative to Adderall. . . . Clinically shown to help diseases of the brain such as Alzheimer's and even dementia."
•"Adderall and similar drugs used to treat ADD and ADHD, are among the most abused drugs in the U.S. and abroad…. [T]he drugs can be highly addictive…. Mind IgniteTM is a safe and highly effective alternative to Adderall."
•"In fact, some of [Mind Ignite'sTM sixteen] ingredients have been clinically shown to help diseases of the brain such as Alzheimer's and even dementia."
•"The ingredients in Mind Ignite … are used to treat Alzheimer's."

On the "Mind IgniteTM Ingredients" page of your www.mindignite.com website:

•"Mind IgniteTM Ingredients"

o "…Bacopa Monnieri is a natural … anti-anxiety aid."
o "Alpha GPC … is such a powerful nootropic ingredient that it is being tested as a possible treatment for Alzheimer's patients."
o "Ginkgo Biloba is known to … treat the symptoms of ADD and ADHD…"
o "L-Tyrosine is an important amino acid that can … reduce anxiety"
o "The benefits of PS [Phosphatidylserine] … counteract the symptoms of ADHD…"
o "Huperzine A … is also known to help treat Alzheimer's."
o "St. John's Wort Extract … eases … anxiety. It also has been known to alleviate symptoms of ADHD…. The key compound in the herb is hypericin which is primarily responsible for helping with depression."
o "Studies have shown that vitamins B-6 and B-12 specifically can help prevent cognitive decline and even help in preventing dementia and Alzheimer's."

On the "TEKMALE INGREDIENTS" page of your www.tekmale.com website:

•"TEKMALE INGREDIENTS"

o "One particular clinical study of Korean Ginseng was done on a group of 45 impotent men. They supplemented with highly standardized Korean Ginseng for weeks and the study resulted in over 60% of the men no longer being impotent."
o "Muira Puama … has the ability to fight … premature ejaculation…"
o "Yohimbe Bark Extract is actually used in a large number of countries as a prescription drug for erectile dysfunction…. Yohimbe Bark Extract is as close as you can get to taking Viagra, it's that effective."

On the "TESTOTEK INGREDIENTS" page of your www.testotek.com website:

•"TESTOTEK INGREDIENTS"

o "Vitamin B6 … helps in the production of serotonin, a chemical that is vital to fighting off depression and anxiety."
o "Vitamin B5 is essential because it helps regulate cholesterol…"
o "Siberian ginseng … has long been used to … lower blood pressure, and help treat Alzheimer's and diabetes."

Additional examples of some of the claims on your www.teknaturals.com website include the following:

On the blog page titled "The Bedroom Benefits of Ginkgo Biloba" (Ginkgo Biloba is an ingredient in your products Mind Ignite and TEK Male):

•"[Ginkgo Biloba] has been used to act as a natural remedy for erectile dysfunction…"
•"Benefits of Ginkgo Biloba"

o "Reduces risk for neurodegenerative diseases"
o "Fights anxiety and depression"
o "Treats adhd [sic]"
o "Treats migraines"

On the blog page titled "The Many Benefits of Ginseng" (Ginseng is an ingredient in your product TEK Male):

•"Benefits of Ginseng"

o "Anti-inflammatory agent"
o "Helps prevent cancer"
o "Reduces likelihood of getting erectile dysfunction"

•"… Ginseng could now be used as an alternative to Viagra."
•"[Ginseng] has been used to treat people suffering from erectile dysfunction…"

On the blog page titled "New Mind Ignite Review from HealthToday.com," there is a link to a review of your Mind Ignite product on http://healthtoday.com/mind-ignite-review-top-nootropic-market/. Your post states, "Check out this all new detailed review of our … Mind IgniteTM."

The linked article, which you endorsed, contains evidence of intended use in the form of a personal testimonial recommending or describing the use of Mind Ignite for the cure, mitigation, treatment, or prevention of disease. An example of such testimonials, which provide evidence that your product is intended for use as a drug, includes:

•"I became addicted, right at the point that Adderall lost its effect…. I came across brain supplements, better known as nootropics, while researching natural ADHD cures. I was hesitant at first, however, after trying a few well-reviewed ingredients, my mind began to change … consumers [are] switching from Adderall to nootropics."

Your www.mindignite.com website also contains evidence of intended use in the form of personal testimonials. An example of such testimonials includes:

•"I take Mind Ignite every day. I have struggled with ADHD for many years and took Adderall but stopped because of the side effects. My friend recommended Mind Ignite and it works for me…"

Also, claims made on your Facebook page at https://www.facebook.com/TEKNaturals, which provides links to your website at www.teknaturals.com, provide additional evidence that your products are intended for use as drugs:

Posts by your company on your Facebook timeline page include the following:

•On August 17, 2018: "Muira Puama [an ingredient in TEK Male] ... provides a[n] ...effect in ... treating erectile dysfunction"

•On November 29, 2017, your post states, "Read this detail review for more information" and links to a review on http://thesupplementreviews.org/nootropics/mind-ignite-review/. The linked review, which you endorsed, provides additional evidence that your products are intended for use as drugs:

o "Mind Ignite Review"

•"[T]hese supplements are designed to counter the symptoms of ADD and ADHD"
•"Nootropics are generally all-natural and safe-alternatives to Adderall and other prescription ADD/ADHD drugs."
•"Below we will outline these [Mind Ignite] ingredients so that you can get a feel for what each one's specific role is."
•Ginkgo Biloba Extract ... will help to counteract the symptoms of ADD and ADHD"
•"L-Tyrosine ... is a great natural alternative to the amphetamine that is found in drugs like Adderall."
•"Vitamins ... B6 and B12 specifically can reverse mental decline from aging or people who suffer with dementia or even Alzheimer's."

Claims on your Twitter page at www.twitter.com/TeKNaturals, which provides links to your website at www.teknaturals.com, provide additional evidence that your products are intended for use as drugs:

Posts by your company on your Twitter page include the following:

•On January 16, 2018, your post states, "Still getting great reviews for ... BurnerTEK and links to a review on www.iast.net/fat-burners/burnertek-review/. This linked review, which you endorsed, includes the following claim:"

o "BurnerTEK Ingredients"

•"Green Coffee Bean Extract ... Chlorogenic acid, a primary ingredient found in green coffee bean extract, has been proven in various independent studies to counter the effects of diabetes."

Furthermore, claims made on your Instagram page at www.instagram.com/teknaturals, which provides links to your website at www.burn4her.com, provide additional evidence that your products are intended for use as drugs:

Posts by your company on your Instagram page include the following:

•On September 24, 2017: "Ever heard of nootropics? These are powerful natural brain boosters that serve as alternatives to the prescription drug Adderall." [Your product Mind Ignite is described on its product page as a nootropic.

•On July 9, 2017: "Here is a list of the major benefits men in our studies have reported experiencing since they started using TEKMale... ELIMINATE PREMATURE EJACULATIONS"

Your products BURN4Her, BurnerTEK, Mind Ignite, TEK Male, and TestoTEK are not generally recognized as safe and effective for the above referenced uses and, therefore, these products are "new drugs" under section 201(p) of the Act [21 U.S.C. § 321(p)]. New drugs may not be legally introduced or delivered for introduction into interstate commerce without prior approval from FDA, as described in sections 301(d) and 505(a) of the Act [21 U.S.C. §§ 331(d), 355(a)]. FDA approves a new drug on the basis of scientific data and information demonstrating that the drug is safe and effective.

A drug is misbranded under section 502(f)(1) of the Act [21 U.S.C. 352(f)(1)] if the drug fails to bear adequate directions for its intended use(s). "Adequate directions for use" means directions under which a layperson can use a drug safely and for the purposes for which it is intended (21 C.F.R. § 201.5). Prescription drugs, as defined in section 503(b)(1)(A) of the Act [21 U.S.C. § 353(b)(1)(A)], can only be used safely at the direction, and under the supervision, of a licensed practitioner.

Your products BURN4Her, BurnerTEK, Mind Ignite, TEK Male, and TestoTEK are intended for treatment of one or more diseases that are not amenable to self-diagnosis or treatment without the supervision of a licensed practitioner. Therefore, it is impossible to write adequate directions for a layperson to use your products safely for their intended purposes. Accordingly, BURN4Her, BurnerTEK, Mind Ignite, TEK Male, and TestoTEK fail to bear adequate directions for their intended use and, therefore, the products are misbranded under section 502(f)(1) of the Act [21 U.S.C. § 352(f)(1)]. The introduction or delivery for introduction into interstate commerce of these misbranded drugs violates section 301(a) of the Act [21 U.S.C. § 331(a)].

The violations cited in this letter are not intended to be an all-inclusive list of violations that exist in connection with your products. You are responsible for investigating and determining the causes of the violations identified above and for preventing their recurrence or the occurrence of other violations. It is your responsibility to ensure that your firm complies with all requirements of federal law, including FDA regulations.

You should take prompt action to correct the violations cited in this letter. Failure to promptly correct these violations may result in legal action without further notice, including, without limitation, seizure and injunction.
Within fifteen working days of receipt of this letter, please notify this office in writing of the specific steps that you have taken to correct violations. Include an explanation of each step being taken to prevent the recurrence of violations, as well as copies of related documentation.

If you believe that your products are not in violation of the Act, include your reasoning and any supporting information for our consideration. If you cannot complete corrective action within fifteen working days, state the reason for the delay and the time within which you will complete the correction.

Your written reply should be directed to Shawn Goldman, United States Food and Drug Administration, Center for Food Safety and Applied Nutrition, 5001 Campus Drive, Office of Compliance (HFS-608), Division of Enforcement, College Park, Maryland 20740-3835. If you have any questions, please contact Mr. Goldman at Shawn.Goldman@fda.hhs.gov.

Sincerely,

/S/

William A. Correll Jr.

Director

Office of Compliance

Center for Food Safety and Applied Nutrition

/S/

Mary K. Engle

Associate Director

Division of Advertising Practices

Federal Trade Commission

⊖ More Warning Letters (/inspections-compliance-enforcement-and-criminal-investigations/compliance-actions-and-activities/warning-letters)